Janice M. Bellucci, SBN 108911
(JMBellucci@aol.com)
LAW OFFICE OF JANICE M. BELLUCCI
2110 K Street
Sacramento, CA 95816
Tel:   (805) 896-7854
Fax:   (916) 823-5248

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH W. SIMONSON, an individual,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ROBERT A. LONG, in his official capacity as Commander, Space Launch Delta 30; and DOES 1 through 10;<br><br>　　　　　　Defendants. | Case No.  2:22-CV-03236<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.　Persons retired from career active duty in the United States military have long enjoyed an array of benefits granted to them in exchange for career military service, including: (a) free direct medical and dental care at Military Treatment Facilities (MTFs); (b) free prescription medication and medical supplies; (c) access to commissary and

exchange stores on military bases; and (d) participation in Morale, Welfare, and Recreation (MWR) programs on military bases. Such benefits were and continue to be routinely promised by recruiters as inducement to remain in the military as a career, and are provided under various statutes and regulations. See, e.g., 32 C.F.R. § 161.9 (Retiree benefits "include civilian health care, direct care at an MTF, commissary, exchange, and MWR, which are conveyed on the authorized CAC or uniformed services ID card."); 10 U.S.C. § 1074(b) (statutory right to direct medical and dental care at MTFs). Accordingly, as one court observed, "[i]t is common knowledge that retired military personnel frequently settle near a military installation where they have post exchange and commissary privileges and free medical service." Katcoff v. Marsh, 755 F.2d 223, 238 (2d Cir. 1985) (Meskill, J., concurring and dissenting).

2. Because many of these benefits are available only on military bases, retired servicemembers must have physical access to those bases in order to obtain and exercise these benefits. This is particularly true of medical and dental care, for which "direct care" is provided only at on-base MTFs. In addition, because of the comprehensive goods and services available to retired servicemembers on military bases, many retirees rely upon the reduced prices at commissary and exchange stores to stretch thin retirement pay and to acquire groceries, pharmaceuticals, medical equipment, clothing, and other necessities at reduced or no cost. Moreover, because of the opportunity to socialize and recreate with other veterans, many retirees use military bases their primary social outlets.

3. Plaintiff, age 75, is a retired veteran and officer of the United States Air Force. Plaintiff was recruited into the Air Force during the Vietnam era, when recruiters promised lifetime access to all military bases as a benefit of career military service. During his 20 years on active duty, Plaintiff was stationed on a variety of military bases, including Vandenberg Space Force Base (SFB), formerly known as Vandenberg Air Force Base (AFB), in Santa Barbara County, California.

4. Subsequent to retirement from the military, Plaintiff worked as a military contractor on Vandenberg AFB. Upon retiring as a military contractor, Plaintiff permanently returned to his personal residence in Santa Barbara County in order to access and enjoy his military rights and benefits, including the direct medical and dental care to which he is entitled as a military retiree, and which he had obtained and relied upon for several decades. Plaintiff also made Vandenberg SFB his primary outlet for shopping, recreation, and socialization, as he has many friends who are also retired military members and who also take advantage of access to that base.

5. Plaintiff was granted unescorted access to Vandenberg SFB for those purposes for more than 30 years until November 2021, when he was suddenly and without notice denied access to Vandenberg SFB, as more fully pleaded herein. Specifically, in November 2021, personnel stationed at one or more Vandenberg SFB gates informed Plaintiff that he is no longer permitted to enter Vandenberg SFB for any purpose. The stated reason for Plaintiff's exclusion from Vandenberg SFB is his presence on California's sex offender registry for a conviction sustained 30 years ago, in 1992. Plaintiff's conviction offense occurred after Plaintiff was retired from the military, did not take place on a military base, and had no relationship to his military service.

6. As more fully pleaded herein, Plaintiff has a constitutionally protected property interest in his military retirement benefits, including direct medical and dental care, access to the commissary and exchange, and MWR programs. Plaintiff has received and enjoyed those benefits as a retired member of the military for more than 30 years on Vandenberg SFB. Denying Plaintiff access to Vandenberg SFB is tantamount to depriving Plaintiff of his military retirement benefits because those benefits cannot be exercised without physical access to a military base. Plaintiff was denied access to Vandenberg SFB suddenly, without explanation or reason, and without notice, in violation of the Due Process guarantee of the Fifth Amendment to the U.S. Constitution. Separately, the denial of Plaintiff's access to Vandenberg FSB violates the Due Process

guarantee of the Fifth Amendment to the U.S. Constitution in that the decision did not comply with DoD policies governing base access set forth in DoD Manual 5200.08 Vol. 3, *Physical Security Program: Access to DoD Installations*, attached hereto as Exhibit A. Specifically, the denial of Plaintiff's access to Vandenberg SFB was a summary decision based solely upon Plaintiff's presence on a sex offender registry, rather than a reasoned decision based upon the criteria and evidence set forth in that policy document.

7. Plaintiff seeks a judgment declaring that Plaintiff: (a) enjoys a constitutionally protected property interest in his military retirement benefits; and (b) Plaintiff cannot be denied the ability to exercise his military retirement benefits without notice and a hearing consistent with the standard imposed by the Fifth Amendment to the U.S. Constitution. Plaintiff also seeks an injunction enforcing his right to access Vandenberg SFB and all other military bases consistent with these rights.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

9. Venue is proper in the Central District of California under 28 U.S.C. §1391(e)(1)(B) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this district.

10. This Court has the authority to issue declaratory and injunctive relief, as well as any other appropriate relief, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11. Plaintiff Joseph W. Simonson ("Plaintiff") is a retired career member of the United States Air Force who currently resides in Santa Barbara County, California.

12. Colonel Robert A. Long ("Defendant") is the Commander of Space Launch Delta 30 and Western Launch and Test Range at Vandenberg SFB. In his official capacity, Defendant Long is responsible for the base access policies observed, applied, and enforced at Vandenberg SFB, including but not limited to Plaintiff's denied access to Vandenberg SFB.

13. The true names and capacities of Defendants sued as Does 1 through 10 are unknown to Plaintiff, who therefore sues such Defendants by fictitious names. The Doe Defendants include employees of, or contractors, for the United States military who are responsible of Plaintiffs' denied access to Vandenberg SFB.

# FACTS

## The Benefits Granted to Retired Members of the Armed Forces Require Access to Military Bases

14. "It is common knowledge that retired military personnel frequently settle near a military installation where they have post exchange and commissary privileges and free medical service." Katcoff v. Marsh, 755 F.2d 223, 238 (2d Cir. 1985) (Meskill, J., concurring and dissenting). See also Absher v. United States, 9 Cl. Ct. 223, 226 (1985), aff'd, 805 F.2d 1025 (Fed. Cir. 1986) ("As retirees of the uniformed services, plaintiffs are entitled to commissary, recreational, travel and health benefits in addition to their retired pay. See, e.g., Army Regs. 40–3, ¶ 4–11 (Feb. 15, 1985) (medical services); 60–20, ¶ 2–9 (Aug. 1, 1984) (exchange privileges); 30–19, App. B (October 15, 1982) (commissary privileges); 215–2, ch. 2 (August 26, 1985) (package stores; recreational privileges; morale support activities).")

### Direct Medical and Dental Care

15. A retired servicemember's right to direct medical and dental care at MTFs is granted by the Dependents Medical Care Act of 1956, 10 U.S.C. § 1074(b).

16. Members of the military, including retired members, have enjoyed free medical care since the earliest days of the Republic. Congress first authorized Army and Navy "medical departments" in 1799, with the primary mission of serving active-duty members." U.S. Dep't of Defense, *Military Compensation Background Papers* (7th Ed. Nov. 2011), at 907, citing 1 Stat. 721, 722 (1799) (hereinafter, "*Military Compensation Background Papers*").

17. In later years, "[w]hen military personnel were given retirement rights, it always was understood that they might be recalled to active duty in time of national need, and it was determined that military retirees should be given medical care so that they would be available as force augmentees if needed. Retirees were in fact members, even if not on active duty, and both they and their dependents received medical care from military medical facilities on a 'space-available' basis." Ibid.

18. After WWII, with the increase in the number of military retirees and other dependents, "[m]any retirees in fact were forced to seek medical services in the civilian economy. . . ." Because of the adverse effects on morale occasioned by rationing of medical care provided through military medical facilities to active-duty dependents and retirees (and their dependents), Congress determined to provide alternative sources of medical care to those communities, so that, if their medical care need could not in fact be met through the 'space available' military medical facilities, they would nevertheless get the care they needed." Ibid. In 1956, Congress enacted the Dependents Medical Care Act, which "gave military retirees and their dependents the right to care in military medical facilities based upon 'the availability of space and facilities and the capabilities of the medical and dental staff.'" Id. at 907-908, citing Pub. L. No. 84-569, 70 Stat. 250 (1956). The Act "also gave the Secretary of Defense the authority to contract with civilian sources for the medical care of spouses and the children of active-duty members of the uniformed services, but not for retirees and their dependents."

6
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

19. In later years, Congress authorized the Secretary of Defense to contract for off-base care for retirees in two successive programs, known as the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), and its successor, TRICARE. However, "*under CHAMPUS and TRICARE Standard, beneficiaries are generally required to obtain non-emergency inpatient care from nearby military medical facilities if such care is available there*." Id. at 908, emphasis added. As TRICARE has been amended, "[a]ll beneficiaries continue to be eligible to receive care in MTFs[.]" Id. at 911.

20. The purpose of an entitlement to free medical and dental care for retirees is in part "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents." 10 U.S.C. § 1071. As noted, since 1956, military retirees and their dependents have had "a contingent right to care in military medical—including dental—facilities based upon the 'availability of space and facilities and the capabilities of the medical and dental staff.'" *Military Compensation Background Papers*, at 674, quoting 10 U.S.C. § 1074(b). In other words, military retirees have a statutory right and entitlement to access Military Treatment Facilities (MTFs) that provide medical and dental care, for the purpose of receiving "direct care" at those facilities, subject only to the availability of space or capable staff. The relevant statute, part of the Dependents' Medical Care Act, currently reads:

> Under joint regulations to be prescribed by the administering Secretaries, a member or former member of a uniformed service who is entitled to retired or retainer pay, or equivalent pay may, upon request, be given medical and dental care in any facility of any uniformed service, subject to the availability of space and facilities and the capabilities of the medical and dental staff. The administering Secretaries may, with the agreement of the Secretary of Veterans Affairs, provide care to persons covered by this subsection in facilities operated by the Secretary of Veterans Affairs and

> determined by him to be available for this purpose on a reimbursable basis at rates approved by the President.

10 U.S.C. § 1074(b).

21. The administering Secretaries of the branches of the United States military have issued regulations implementing the statutory entitlement of 10 U.S.C. section 1074, including but not limited to 32 U.S.C. § 161.13(a). See also 32 C.F.R. § 161.9(a).

22. Federal law does not categorically restrict military retirees who are required to register as a sex offender, or persons convicted of a sex offense, from obtaining direct medical and dental care at MTFs. Nor does federal law allow military retirees to be denied access to MTFs for direct care because they are required to register and/or were convicted of a sex offense. In other words, military retirees who are also registrants enjoy the same entitlement to direct care at MTFs as all other military retirees.

### *Commissary, Exchange, and MWR Programs*

23. Access to the commissary, exchange, and Military Morale, Welfare, and Recreation (MWR) programs are benefits awarded to retired members of the military. 32 C.F.R. § 161.3.

24. Commissary and exchange stores are retail outlets on military bases and other facilities that offer groceries, gasoline, and other goods and services at reduced prices. Many retired servicemembers depend upon their access to exchange and commissary stores to afford basic necessities due to their limited retirement income. As provided in 10 U.S.C. § 2481(a),

> The Secretary of Defense shall operate, in the manner provided by this chapter and other provisions of law, a world-wide system of commissary stores and a separate world-wide system of exchange stores. The stores of each system may sell, at reduced prices, food and other merchandise to members of the uniformed services on active duty, members of the uniformed services *entitled to retired pay*, dependents of such members, and persons authorized to use the system under chapter 54 of this title.

10 U.S.C. § 2481(a), emphasis added.

25. As further explained in DoD Instruction 1330.17, "[t]he DoD commissary program is an integral element of the military pay and benefits package for active duty personnel. . . . [T]he DoD commissary program enhances the quality of life of members of the uniformed services, *retired members*, and their dependents and supports military readiness, recruitment, and retention." DoDI 1330.17 (June 18, 2014), at 1, emphasis added. DoD Instruction 1330.17 confirms the right to retired service members to use the commissary:

> PATRONS AUTHORIZED COMMISSARY PRIVILEGES. This section lists the individuals, organizations, and activities entitled to or authorized unlimited commissary privileges, except when prohibited by treaty or other international agreements in foreign countries.
>
> . . . .
>
> c. <u>Retired Personnel. The following categories of retired personnel are authorized commissary privileges</u>:
>
> (1) All personnel carried on the official retired lists (Active and Reserve Components) of the uniformed services who are retired with pay, granted retirement pay for physical disability, or entitled to retirement pay whether or not such pay is waived or pending due to age requirement; or enlisted personnel transferred to the Fleet Reserve of the Navy and the Fleet Marine Corps Reserve, after 20 or more years of active service. These personnel are equivalent to Army and Air Force retired enlisted personnel. For Reserve Components, see chapters 67, 367, 571, and 867 of Reference (c).

DoDI 1330.17 (June 18, 2014), at 9.

26. Similarly, Department of Defense Instruction 1330.21 provides that "Uniformed or Retired Uniformed Personnel" have "*unlimited* exchange service benefits." DoDI 1330.21 (July 14, 2005), at 24, emphasis added.

27. MWR Programs include a comprehensive network of support services, as well as recreation, support, entertainment, travel, and leisure activities. DoD Instruction 1015.10 provides that

> Military MWR programs: (a) are an integral part of the military and benefits package; (b) Build healthy families and communities and provide consistently high quality support services that are commonly furnished by

> other employers or State and local governments to their employees and citizens; (c) Encourage positive individual values and aid in recruitment and retention of personnel; and (d) Promote esprit de corps and provide for the physical, cultural, and social needs; general well-being; quality of life (QOL); and hometown community support of Service members and their families.

DoDI 1015.10 (July 6, 2009), at 2.  DoDI 1015.10 confirms that "Uniformed Services retirees" have "*Unlimited* Use Authorized for All MWR Programs."  Id. at 21, emphasis added.

28.     Many retired servicemembers rely upon MWR Programs as their primary social outlets.  Federal law does not restrict military retirees who are required to register as a sex offender, or persons convicted of a sex offense, from exercising commissary, exchange, and MWR privileges solely because they are required to register as a sex offender and/or were convicted of a sex offense.

**Plaintiff Joseph W. Simonson**

29.     Plaintiff Joseph W. Simonson, age 75, is a retired veteran of the Air Force who spent most of his career either as an active-duty member of the United States military, or as a private contractor supporting the United States military.

30.     Plaintiff joined the Reserve Officer Training Corps in college and, upon graduation, was commissioned as a Second Lieutenant in the United States Air Force. Plaintiff served on active duty in the Air Force for 20 years, retiring in 1988 with the rank of Major.  While serving on active duty, Plaintiff was awarded the Air Force Commendation Medal three times, the Joint Service Commendation Medal once, and the Meritorious Service Medal three times.

31.     In 1992, four years after his retirement from the Air Force, Plaintiff was convicted of a single count of violating California Penal Code section 288, subd. (c), described as lewd and lascivious acts with a child aged 14-15.  This is Plaintiff's first and only criminal conviction of any kind.  Plaintiff's offense did not occur on a military base, and had no relation to the military or military service.

32. In 1993, Plaintiff moved his residence near Vandenberg SFB in part to take advantage of the benefits available to retired members of the military on that base.

33. Between 2005 and 2014, Plaintiff was employed by a defense contractor as an instructor and training developer. During that time, Plaintiff had a secret security clearance, and accessed Vandenberg SFB base on a daily basis in his capacity as a contactor employee.

34. In 2014, Plaintiff fully retired at age 67 as an employee of a base contractor. Plaintiff continued to reside in his home near Vandenberg SFB because of the opportunity to access that base for direct medical and dental care, to shop at the commissary and exchange stores available there, and to socialize with other veterans. As for many veterans, Plaintiff's access to Vandenberg SFB also became Plaintiff's most meaningful social outlet in retirement.

35. Both before and for nearly three decades after his conviction, Plaintiff regularly entered Vandenberg SFB for lawful purposes consistent with his work as a contractor, as well as his entitlements and privileges as a retired veteran, without incident. Plaintiff routinely purchased his groceries, gasoline, clothing, and other household goods on base. Plaintiff obtained his pharmaceutical prescriptions on base free of charge. Plaintiff also obtained annual physicals on base, as well has his annual flu shot and other routine medical care.

36. In or about October 2021, Plaintiff attempted to enter Vandenberg SFB to obtain medical prescriptions at the MTF and was denied access without explanation. Plaintiff subsequently contacted Vandenberg Security Forces staff, who explained that Plaintiff was denied and would continue to be denied access to Vandenberg SFB for all purposes, including medical care, because of his presence on the sex offender registry. At the time Plaintiff was denied entry to Vandenberg SFB, he was in the process of completing his annual physical at the MTF. Laboratory tests had been performed, but Plaintiff had not yet returned for his final consultation. Unable to complete an in-person

appointment, Plaintiff had a telephone consultation with his Primary Care Physician, at which time Plaintiff was diagnosed for the first time with diabetes.  Plaintiff's physician discussed Plaintiff's need to undergo an immediate course of treatment for this chronic life-threatening condition, but was prevented from doing so by virtue of his exclusion from Vandenberg SFB.

**Base Access Policies**

37.   On information and belief, the current policy governing physical access to Vandenberg SFB is set forth in DoD Manual 5200.08 Vol. 3, *Physical Security Program: Access to DoD Installations*, which became effective on January 2, 2019.  (Hereinafter, "DoD Manual 5200.08", attached hereto as Exhibit A.)  DoD Manual 5200.08 states that "[base] Commanders have authority to take reasonably necessary and lawful measures to protect installation property and personnel, <u>but that authority must not be exercised in an arbitrary, unpredictable, or discriminatory manner.  Removal or denial actions must be based on reasonable grounds and be judiciously applied</u>."  Exh. A at 4, emphasis added.

38.   The "Requirements for Access to DoD Installation[s]" are set forth in Section 3 of DoD Manual 5200.08.  Among those requirements is a determination of a person's "fitness" to be granted one of three types of base access:  unescorted access, trusted traveler, and escorted access.  Exh. A at 9.  Plaintiff has previously been granted unescorted access to Vandenberg SFB.

39.   Establishing fitness for unescorted access "has two elements:  historic fitness and current fitness."  Exh. A at 10-11.  A determination of "Historic Fitness" involves a point-in-time review of the individual's prior criminal history achieved through a review of government databases.  Exh. A at 10.  A determination of "Current fitness" involves "recurring and continuing" review of an individual's "current derogatory information through a check of authoritative government sources," among which are "the National Sex Offender Registry."  Exh. A at 11.  However, DoD Manual 5200.08 provides that "DoD Components may grant unescorted access to a convicted felon, in accordance with

applicable Federal, State, and local laws, <u>after considering appropriate mitigating factors such as the nature and seriousness of the offense, the circumstances surrounding the offense, recency and frequency of the offense, the individual's age and maturity at the time of the offense, the individual's effort toward rehabilitation, and other factors</u>." Exh. A at 11, emphasis added.

40. As pleaded above, on information and belief, the denial of Plaintiff's access to Vandenberg SFB did not comply, and is not consistent with, the requirements set forth in DoD Manual 5200.08, because the decision to deny Plaintiff access to Vandenberg SFB was based solely upon Plaintiff's presence on a sex offender registry. The decision was therefore arbitrary and not judiciously applied, without "considering appropriate mitigating factors."

## CLAIM FOR RELIEF

**(Fifth Amendment – Deprivation of Property Without Due Process of Law)**

41. Plaintiff re-alleges and incorporates the foregoing paragraphs of this Complaint as though fully set forth herein.

42. Plaintiff is a retired member of the United States Air Force who is entitled to retired pay, as well as other benefits afforded to retired members of the military, including: (a) free direct medical and dental care at Military Treatment Facilities; (b) free prescription medication and medical supplies; (c) access to commissary and exchange stores on military bases; and (d) participation in Morale, Welfare, and Recreation (MWR) programs on military bases.

43. Vandenberg SFB is a Military Treatment Facility which has space adequate to provide, and staff capable of providing, direct medical and dental care to Plaintiff. Vandenberg SFB is also a facility that makes available commissary, exchange, and MWR programs and facilities to military retirees. Consistent with his status as a retired member

of the U.S. military, Plaintiff entered Vandenberg SFB for as many as 30 years for the purpose of exercising these benefits.

44. "The Supreme Court has held that *continued receipt* of Government benefits is a statutorily created property interest protected by the Fifth and Fourteenth Amendments. . . . Under the Supreme Court's analysis, a person obtains a property interest in a benefit once it is acquired." Greene v. Lujan, No. C89–645Z, 1992 WL 533059, at *3 (W.D. Wash. Feb. 25, 1992), aff'd sub nom. Greene v. Babbitt, 64 F.3d 1266 (9th Cir. 1995), citing Matthews v. Eldridge, 424 U.S. 319, 332; Board of Regents v. Roth, 408 U.S. 564, 576 (1972). Accordingly, due process is implicated whenever the federal government alters or extinguishes a previously recognized right or status. Roth, 408 U.S. at 576-77 (The aim of the Fifth Amendment is "to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined."); Greene, 64 F.3d at 1271-74.

45. Plaintiff has a constitutionally cognizable and protected property interest in the military retirement benefits identified herein, by virtue of: (a) his status as a retired member of the military; (b) the provisions of law granting retired members of the military a legitimate claim to such benefits; (c) Plaintiff's enjoyment of such benefits for a 30-year period; and (d) Plaintiff's extensive reliance interest and settled expectations of such benefits, as pleaded herein.

46. The actions of Defendant, and his subordinates and agents, to deprive Plaintiff access to Vandenberg SFB are tantamount to a deprivation of Plaintiff's property interest in his military retirement benefits, because those benefits cannot be exercised without physical access to a military base. Greene, 64 F.3d at 1271-74. This deprivation of Plaintiff's property rights occurred without notice, without hearing, and without other process as required by law.

47. Separately, Plaintiff's exclusion from Vandenberg SFB denied Plaintiff due process law for the additional reason that Defendant, and his subordinates and agents,

failed to comply with Department of Defense procedures governing access to military bases. Specifically, DoD policy mandates that "authority [to exclude a base visitor] must not be exercised in an arbitrary, unpredictable, or discriminatory manner. Removal or denial actions must be based on reasonable grounds and be judiciously applied." Plaintiff's denial of base access was also accomplished in violation of DoD base access policy mandating that "DoD Components may grant unescorted access to a convicted felon, in accordance with applicable Federal, State, and local laws, after considering appropriate mitigating factors such as the nature and seriousness of the offense, the circumstances surrounding the offense, recency and frequency of the offense, the individual's age and maturity at the time of the offense, the individual's effort toward rehabilitation, and other factors." That is, the denial of base access to Plaintiff was arbitrary, and not based upon either reasoned grounds or judiciously applied, in that it was based solely upon Plaintiff's requirement to register as a sex offender, rather than a reasoned and judicious consideration of the above-referenced factors, including but not limited to Plaintiff's status as a retired member of the military, his purpose for entering Vandenberg SFB, Plaintiff's age and health, the details of Plaintiff's conviction, the number of years that Plaintiff has entered Vandenberg SFB without incident, and Plaintiff's demonstrably successful efforts toward rehabilitation.

## **PRAYER FOR RELIEF**

Based on the foregoing claims, Plaintiff seeks judgment against Defendants as follows:

    a.    A judgment declaring that Plaintiff has a constitutionally protected property interest in military retirement benefits to direct medical and dental care at Military Treatment Facilities, access to commissary and exchange facilities, and MWR program privileges.

b. A judgment declaring that Plaintiff cannot be denied access to Vandenberg SFB when he seeks to access these retirement benefits without notice and hearing.

c. Plaintiffs' reasonable attorney's fees and costs under 28 U.S.C. Section 1988; and

d. Any other relief the Court deems just and proper.

Dated: May 12, 2022                LAW OFFICE OF JANICE M. BELLUCCI

By: _____*/s/ Janice M. Bellucci*_____
Janice M. Bellucci
Attorney for Plaintiff

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**